CHARLY WAHLSTROM & others *vs.* HANS TRULSON.

Worcester.     October 19, 1895. — March 2, 1896.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Mechanic's Lien — Sub-contract — Variance — Law and Fact — Consent of Owner — Partnership.*

A mechanic's lien, under Pub. Sts. c. 191, for labor performed by a sub-contractor in the construction of a house, does not depend upon the terms of the contract between the owner of the land and the original contractor.

Where, after a sub-contract for labor in the construction of a house has been partially performed, the original contractor fails, at the trial of a petition by the sub-contractor to enforce a mechanic's lien, under Pub. Sts. c. 191, if the question whether there is a variance between the certificate filed, which alleges the contract to have been made between the petitioner and the original contractor, and the proof depends upon the effect to be given to a conversation which took place between the petitioner and the respondent after the failure of the contractor and before the work was completed, this question is for the jury.

If, at the trial of a petition to enforce a mechanic's lien, under Pub. Sts. c. 191, for labor performed by a sub-contractor in the construction of a house, there is abundant evidence of consent on the part of the respondent, it is immaterial whether or not he knew that the sub-contract had been awarded without the written consent of the architect, whose consent was required by the provisions of the original contract.

If a contract for labor to be performed in the construction of a house is entered into by one partner in behalf of his firm, and the firm does the work, and the owner of the land knows that the persons composing the firm are doing it, it is immaterial that he did not know that the contractor was acting in behalf of the firm, and the members of the firm may maintain a petition to enforce a mechanic's lien, under Pub. Sts. c. 191, for the labor so performed.

PETITION, by Charly Wahlstrom, Carl Bergman, and William Lambstrom, copartners as Charly Wahlstrom and Company, to enforce a mechanic's lien, under Pub. Sts. c. 191, for labor per-

formed by the petitioners upon a house belonging to the respondent. Trial in the Superior Court, before *Aldrich*, J., after whose death a bill of exceptions was allowed by *Gaskill*, J., in substance as follows.

It appeared in evidence that the respondent made a written contract with one Samuel Harris to build a house, in accordance with plans and specifications, for an entire sum, the contractor to provide all the materials and labor necessary to complete the same, for the sum of $9,965, which contract provided that the work should be done under the supervision of one Patston, the architect, who was to be the agent of the owner for that purpose. The eighth clause of the contract read as follows : " The contractor shall not let, assign, or transfer this contract, or any interest therein, without the written consent of the architects."

There was evidence, which was not controverted, that the petitioners made a contract with Harris, agreeing to furnish the mortar and to lay the brick for a stated price per thousand brick, also to furnish material and plaster the house for a stated price per square yard, which they subsequently did. There was also evidence that before they took the contract the petitioner Wahlstrom told the respondent that he had the job of laying the bricks, but that he did not tell him anything about the plastering, or any details of his engagement, or that any other persons were associated as partners with him ; and that the petitioners entered upon the work and performed a part of their contract in accordance with the terms thereof, from July 24 to October 4, 1893; and it was admitted that, during all that time, the respondent was almost every day at the building, and saw the petitioners engaged in the work of laying the bricks and plastering the house. On October 4, 1893, the petitioners learned that Harris had failed, and Wahlstrom immediately went to the respondent and informed him of what he had heard. Wahlstrom's testimony concerning this interview was to the effect that the respondent said to him, " All right, you go ahead and finish the job, and I will pay you just the same." The respondent's testimony was that he said to Wahlstrom, " You go ahead and finish the work, and I will pay you for what you do hereafter." Wahlstrom, upon cross-examination, testified that he told the respondent he

would not do any more work until he knew where he was going to get his pay ; that before that interview he had been working under his contract with Harris ; and that after he went to see the respondent he relied on him for his pay.

The respondent, on cross-examination, testified that he did not expect that Harris was going to do the work himself.

It further appeared that the money paid on the house was paid by Patston, as agent for the respondent ; that Patston was frequently upon the building supervising the construction of the same during the time when the petitioners were at work upon it ; that, before the contract in question between Wahlstrom and Harris was made, Harris saw the respondent and said, in substance, " Charly Wahlstrom and Company have made the lowest bid for the brickwork and plaster " ; that he replied that he knew them, they were good men, and Harris might go ahead and let it to them ; that he made no writing giving assent, and no claim to that effect was made by the petitioners, but the respondent made no objection at any time to the perform-ance of the work by the petitioners ; that none of the peti-tioners knew anything about the eighth clause in the contract between Harris and the respondent, or that there was any writ-ten contract between them ; that the payments made to the peti-tioners by Patston, as agent for the respondent, after the failure of Harris amounted to $250, while the amount due them for work done and material furnished after the failure of Harris was $68 ; that Patston knew that the payment so made by him was largely in excess of the amount earned by the petitioners after the fail-ure of Harris ; and that the respondent did not know of this payment at the time, unless the same may be inferred from the following evidence of Wahlstrom : " I told Patston that Trulson sent me up there.   He should give me some money."

The certificate of lien filed by the petitioners stated that the contract under which the labor was performed was made with Harris.   The entire amount of the contract to be performed, as agreed, was, as appears by the certificate, $763.40.   The value of the labor was $679.24.   The total credits were given as $435, of which $84.16, having been applied to payment of stock, left the remainder, $350.84, to be deducted from the value of the labor, leaving a balance of $328.40.   Of this amount it was

admitted that all was due for labor performed before October 4, 1893, and before the interview with the respondent, except $68.45, which was for labor done after Harris's failure and the respondent's promise.

Upon the conclusion of the evidence, the respondent asked the judge to rule as follows:

" 1.  The petitioners cannot maintain their petition, as the eighth clause of the contract between the respondent, the owner of the land, and Harris, the contractor, provided that no part of the contract or interest therein should be let or assigned by the contractor without the written consent of the architect, which it is admitted was not obtained.

" 2.  The petitioners cannot maintain their petition, because of a variance between the allegation and the proof, to wit: the certificate filed alleges that the work performed was by virtue of a contract with one Harris, and it appears upon the testimony of Wahlstrom that the labor performed prior to October 4 was by virtue of a contract with Harris, and the labor done after that date was done upon a contract with the respondent. No true and just account was filed in the registry of deeds, and the lien has become dissolved, the petitioners setting forth in their certificate a contract with one man, and presenting proof that it was with two separate persons, and that the work was done under two distinct and entire contracts.

" 3.  The petitioners cannot maintain their action, for the reason that, even if the respondent knew and assented to the performance of the labor or the taking of the contract by Wahlstrom and Company, inasmuch as there is no evidence that he knew the contract had been awarded the petitioners without the written consent of the architect, this is not sufficient evidence to prove the knowledge and consent of the owner.

" 4.  The petition cannot be maintained, for the reason that there is no evidence that the respondent was ever informed that Wahlstrom, Bergman, and Landstrom had the contract, or that he ever assented to the performance of the labor by the partnership of Wahlstrom and Company, Wahlstrom informing the respondent, if indeed he did inform him at all, that he (Wahlstrom) had the contract, not that he and several others had taken it together.

"5. If the jury should find that the respondent waived the provision of the eighth clause of the contract, and assented to the contract between Harris and Wahlstrom, or between Harris and Wahlstrom and Company, not being informed that such contract had been made without first obtaining the written consent of the architect, such waiver would not be sufficient to warrant the finding that the labor was performed by the petitioners with the ' consent ' of the owner.

" 6. If the jury should find that the respondent waived the provision of the eighth clause of the contract, and assented to the contract between Harris and Wahlstrom without knowledge that in fact the contract was between Harris on the one part and Wahlstrom, Bergman, and Landstrom on the other, that is not such a waiver of the contract, or such knowledge and consent, as will enable the petitioners to maintain this action, the respondent being entitled to know the parties with whom he was dealing, or to whom he was assenting.

" 7. If the jury should find that the respondent knew and assented to the performance of the labor or to the taking of the contract by Wahlstrom and Company, without being informed that the architect had not given written consent, that is not such knowledge as would enable the petitioners to maintain this action.

" 8. If the jury should find that Wahlstrom informed the respondent that he had the contract for laying the brick and plastering as well, and the respondent assented thereto without the knowledge that the contract had been given to Wahlstrom, Bergman, and Landstrom as partners, that is not such knowledge or consent as would permit the petitioners to maintain this action."

The judge refused to rule as requested, and instructed the jury in terms to which no exceptions were taken.

The jury returned a verdict for the petitioners for the full amount claimed; and the respondent alleged exceptions.

*C. W. Wood & C. H. Wood,* for the respondent.

*J. R. Thayer & A. P. Rugg,* for the petitioners.

LATHROP, J.    The exceptions in this case are to the refusal of the court to give certain instructions requested; and no exceptions were taken to the charge of the presiding judge.

1. The first instruction requested was properly refused. A lien is given by the Pub. Sts. c. 191, § 1, to a person performing labor or furnishing materials which are actually used in the construction of a building, if such person acts by virtue of an agreement with the owner of the land, or by his consent, or the consent of any person having authority from or rightfully acting for such owner. The lien does not depend upon the terms of the contract between the owner of the land and the original contractor. *Bowen* v. *Phinney*, 162 Mass. 593. *Borden* v. *Mercer*, 163 Mass. 7.

2. The question whether there was a variance between the certificate, which states the contract to have been made between the petitioners and Harris, and the proof, depends upon the effect to be given to a conversation which took place between one of the petitioners and the respondent, after the failure of Harris and before the work was completed. This was a question for the jury to decide. We do not think they were bound to say, from the evidence before them, that the old contract was abandoned, and a new one entered into with the respondent.

3. The third request for instructions was properly refused. There was abundant evidence of consent on the part of the respondent. *Gannon* v. *Shepard*, 156 Mass. 355. Whether he knew, or did not know, that the contract had been awarded without the written consent of the architect, was immaterial.

4. The contract under which the work was done was entered into by one of the petitioners in behalf of his firm. It is of no consequence that the respondent did not know that he was acting in behalf of his firm. The firm did the work, and the respondent knew that the persons composing the firm were doing it. The petitioner who made the agreement was acting as an agent for undisclosed principals. The agreement, in point of law, was made with the firm, and the members of it are the proper parties to enforce it. Lindl. Part. 275. *Gage* v. *Rollins*, 10 Met. 348, 354. *Barry* v. *Page*, 10 Gray, 398.

5. The fifth and sixth requests relate to waiver. In the view which we take of the first request, these are immaterial.

6. The seventh and eighth requests are disposed of by what we have already said.

*Exceptions overruled.*